# UNITED STATES COURT OF INTERNATIONAL TRADE

```
─────────────────────────────────────── x
                                        :
GARG TUBE EXPORT LLP AND GARG           :
TUBE LIMITED,                           :
                                        :
                Plaintiffs,             :
                                        :
                                        :    Court No. 20-00026
        v.                              :
                                        :
UNITED STATES,                          :
                                        :
                Defendant.              :
─────────────────────────────────────── x
```

## COMPLAINT

Plaintiffs Garg Tube Export LLP and Garg Tube Limited, by and through undersigned counsel, hereby allege and state as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiffs seek review of the final results of the U.S. Department of Commerce, International Trade Administration (the "Department"), in the administrative review of the antidumping duty ("ADD") order on welded carbon steel standard pipes and tubes from India covering the period May 1, 2017 to April 30, 2018, published as *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 2,715 (January 16, 2020) ("Final Results").

2. The challenged determinations, findings, and conclusions are set out primarily in the Department's "Issues and Decision Memorandum" (January 9, 2020) and "Final Analysis Memorandum" (January, 9, 2020) accompanying the Final Results.

## JURISDICTION

3. This action is filed pursuant to 19 U.S.C. §§1516a(a)(2)(A)(i) and 1516a(a)(2)(B)(iii) to contest the Final Results issued by the Department. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

4. Plaintiffs are producers/ exporters of welded carbon steel standard pipes and tubes from India that were selected as mandatory respondents. Plaintiffs participated in the Department's proceeding that resulted in the challenged determination and are subject to the Final Results. Therefore, Plaintiffs are interested parties as described in 19 U.S.C. § 1677(9)(A) and have standing to bring this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THE ACTION

5. Parties to actions challenging Department's determinations pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) regarding administrative reviews, must file the summons within 30 days of the date of publication in the Federal Register of the notice of determination. 19 U.S.C. § 1516a(a)(2)(A)(i). The Department published the Final Results on January 16, 2020.

6. This action was commenced on January 30, 2020, within 30 days of the date of publication of the Final Results, by the filing of a Summons. This Complaint is timely filed within 30 days of the filing of Plaintiffs' Summons. Therefore, both the Summons and the Complaint have been timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and pursuant to Rules 3(a)(2) and 6(a) of the Rules of this Court.

## BACKGROUND

7. The Department issued the ADD order on welded carbon steel standard pipes and tubes from India on May 12, 1986. *Antidumping Duty Order; Certain Welded Carbon Steel Standard*

*Pipes and Tubes from India*, 51 Fed. Reg. 17,384 (May 12, 1986).

8. On July 12, 2018, the Department initiated this review with respect to a number of companies including Plaintiff Garg Tube Export LLP. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 32,270, 32273 (July 12, 2018).

9. In this review, the Department individually examined the sales of Plaintiffs, both of whom participated by providing the Department with responses to questionnaires and various factual information and argument concerning the review. By its determination published on July 16, 2019, the Department preliminarily assigned Plaintiffs a weighted average dumping margin of 18.55 percent. *Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 33,916 (July 16, 2019) ("Preliminary Results").

10. Plaintiffs sourced pipe and tube from a number of domestic producers of in-scope merchandise. On November 30, 2018, the Department requested that Plaintiffs obtain cost of production ("COP") information from two of its unaffiliated suppliers. In its Supplemental Section D Questionnaire response of February 19, 2019, Plaintiffs explained in detail about its extensive efforts to obtain the information from the said two unaffiliated suppliers. Plaintiffs also submitted some information they were able to obtain through their own due diligence as well as from one of the suppliers. On May 2, 2019, the Department issued direct requests to both suppliers to provide the information concerning the merchandise they sold to Plaintiffs. However, the two suppliers refused to provide their COP information despite Plaintiffs' repeated requests, and also did not respond to the Department's direct requests for this information.

11. On December 21, 2018, Petitioners submitted both cost-based and sales-based particular market situation ("PMS") allegations. They alleged that the price of hot rolled coil ("HRC"), the

primary input for pipes and tubes, was distorted due to global overcapacity in steel production, the Government of India's ("GOI") subsidization of HRC, and GOI's imposition of ADD and safeguard measures on imports of HRC. They also alleged that a cost based PMS existed with regard to mild steel ("MS") and galvanized pipes (produced from such HRC), which were purchased locally by Plaintiffs. Likewise, the Petitioners alleged a cost based PMS for imported MS pipes, including from the People's Republic of China. They argued that because PMS induced distortions in the prices of HRC and MS and galvanized pipes affected the cost of production of such pipes and tubes, the reported prices of foreign like product in India could not be used as a basis for normal value, and warranted an alternative comparison methodology.

12. On February 12, 2019, the Department accepted these allegations and established a deadline for all interested parties to provide new factual information to rebut, clarify or correct the information contained in Petitioners' December 21, 2018 submission. On March 4, 2019, Plaintiffs timely filed comments and rebuttal factual information in response to the PMS allegations.

13. On February 1, 2019, Petitioners submitted a regression methodology to quantify the alleged distortions in the prices of HRC in this review, which was accepted by the Department on February 14, 2019. On March 22, 2019, Petitioners provided a revised regression methodology, which was accepted by the Department on March 27, 2019. On April 8, 2019, Plaintiffs timely filed comments and rebuttal factual information in response to the revised regression analysis. On April 8, 2019, Petitioners submitted comments in response to Plaintiff's March 4, 2019, rebuttal comments. On June 12, 2019, per the Department's request, Petitioners submitted the regression analysis operable in the SAS®/STAT software environment. On June 18, 2019, Petitioners submitted comments in response to Plaintiffs' April 8, 2019 rebuttal

4

comments. On June 28, 2019, Plaintiffs filed comments in response to Petitioners' June 18, 2019 comments.

14. In the Preliminary Results issued on July 10, 2019, the Department applied a partial facts available with an adverse inference ("AFA") to determine costs incurred by the two unaffiliated uncooperative suppliers, from whom Plaintiffs sourced merchandise for re-sale or further processing for re-sale. For deriving surrogate COPs, as partial AFA, the Department relied on Plaintiffs' acquisition costs, to which it added Plaintiffs' further processing expenses, general and administrative expenses, and financial expenses, plus a markup based on Plaintiffs' home market sale on which it had realized the largest loss.

15. Besides partial AFA, the Department in its Preliminary Results also affirmed a cost based PMS on HRC and determined a PMS adjustment of 38.54 percent by applying Petitioners' proposed regression methodology. Consequently, the Department increased by 38.54 percent Plaintiffs' reported cost for HRC as a component of COP in the self-produced pipe and tube, as well as the embedded cost for HRC as a component of reported COP in MS and galvanized pipe and tube that Plaintiffs sourced from both unaffiliated uncooperative suppliers. In its below cost sale analysis of comparison home market sales, the Department determined the COP by applying a PMS adjustment. The Department also made a PMS adjustment in determining the constructed value for CONNUMs where there were no home market sales.

16. In its case brief filed on August 27, 2019, Plaintiffs argued that the Department should reverse its preliminary decision to apply partial AFA because Plaintiffs could not be penalized for non-cooperation of its unaffiliated suppliers. Plaintiffs provided suitable alternatives to determine COP for goods purchased from its uncooperative suppliers. Plaintiffs also argued that the Department's decision to affirm a cost based PMS on HRC was unsupported by the

substantial record evidence and not in accordance with law and further that the regression methodology was improper for computing a PMS adjustment factor.

17. In the Final Results issued on January 20, 2020, the Department continued to find that a PMS existed in India during the POR concerning the cost of HRC. For computing a PMS adjustment, the Department continued to apply the regression methodology, albeit, with some changes as a result of which the PMS adjustment applied to HRC prices was revised to 10.30 percent. In order to determine the COP of goods purchased from the two suppliers, the Department adhered to its preliminarily applied partial AFA methodology. Likewise, in its below cost sale analysis of comparison home market sales, the Department continued to determine the COP by applying a PMS adjustment. In addition, for constructed value for such CONNUMs where there were no home market sales, the Department continued to make a PMS adjustment.

18. As a result of the changes to the Preliminary Results, the Department in its Final Results assigned Plaintiffs an ADD rate of 11.83 percent. Final Results, 85 Fed. Reg. at 2,715.

## STATEMENT OF CLAIMS

### COUNT ONE

19. Paragraphs 1 to 18 are adopted, incorporated and re-alleged here by reference.

20. The Department's affirmative cost based PMS findings for HRC in relation to Plaintiffs' purchases of such HRC and MS or galvanized pipes (which were produced from such HRC) are unsupported by substantial record evidence and contrary to established law and controlling precedent.

### COUNT TWO

21. Paragraphs 1 to 18 and 20 are adopted, incorporated and re-alleged here by reference.

22. The Department's regression methodology to compute a PMS adjustment was arbitrary and neither supported by substantial record evidence nor in accordance with law.

## COUNT THREE

23. Paragraphs 1 to 18, 20, and 22 are adopted, incorporated and re-alleged here by reference.

24. The Department's use of PMS to increase the cost of HRC while computing the cost of production of foreign like product in the context of its below cost analysis of home market sales of such product is contrary to the well-established law and controlling precedent.

## COUNT FOUR

25. Paragraphs 1 to 18, 20, 22, and 24 are adopted, incorporated and re-alleged here by reference.

26. The Department's application of a partial AFA, for goods purchased by Plaintiffs from their two uncooperative unaffiliated suppliers, is unsupported by substantial record evidence and contrary to the well-established law and controlling precedent. Further, the Department's choice of the AFA mark up, based on Plaintiffs' highest loss making home market sale, was not in accordance with law and precedent

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

(a) hold that the Department's Final Results are unsupported by substantial evidence and otherwise not in accordance with law;

(b) remand the Final Results with instructions to issue a new determination consistent with this Court's decision; and

(c) provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Ned H. Marshak*
Ned H. Marshak
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP
599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400
**
1201 New York Ave., NW, Ste. 650
Washington, DC 20005
(202) 783-6881

*Counsel to Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

10452717_1