UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED, | :<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| UNITED STATES, | : Court No. 20-00026 |
| Defendant, | : |
| and | : |
| NUCOR TUBULAR PRODUCTS INC., and WHEATLAND TUBE, | : |
| Defendant-Intervenors. | : |

**PLAINTIFFS' REPLY TO COMMENTS ON
SECOND REMAND REDETERMINATION**

Plaintiffs Garg Tube Export LLP and Garg Tube Limited (collectively, "Garg"), pursuant to this Court's Order dated March 21, 2022, Slip Op. 22-18, ECF No. 97 ("Remand Order"), hereby reply to the Comments filed on July 11, 2022, by Defendant-Intervenor Nucor Tubular Products Inc. ("Nucor"), ECF No. 101 ("Nucor Comments"), on the U.S. Department of Commerce's ("Commerce") Final Results of Remand Redetermination Pursuant to Court Remand (June 9, 2022), ECF. No. 98 ("Second Remand").

As an initial matter, Nucor simply asks that Commerce adhere to the affirmative particular market situation ("PMS") findings and the PMS adjustments it made in Commerce's initial invalidated determination. *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 2,715 (Jan.

16, 2020) ("*Final Results*"). Nucor did not make any effort to demonstrate – let alone establish – how substantial record evidence either addressed the concerns this Court raised in its March 11, 2022, decision, *Garg Tube Export LLP v. United States*, 569 F. Supp. 3d 1202, 1211-21 (CIT 2022) or otherwise supported an affirmative PMS finding.

First, as to the substantive PMS finding, Nucor argues that Commerce's initial "determination continues to be fully supported by information on the record" and asserts that "finding a PMS to exist in India is consistent with the Court's remand order." Nucor Comments at 2. Nucor argues that "Commerce should have fully considered the record evidence and found a PMS to exist in India" and "urges the Court to once again remand to Commerce." *Id*. As explained below, however, Nucor's arguments are without merit.

In ordering remand, this Court held that "Commerce fails to explain how the cumulative and collective impact of the market phenomena upon which it relies are unique to the Indian market and therefore constitute a PMS." *Garg*, 569 F. Supp. 3d at 1214. This Court further held that: (1) the "overcapacity crisis impacted markets globally and suppressed steel prices"; (2) "a global market condition is not a unique market phenomenon"; and (3) "the existence of trade remedies and subsidies are not unique market phenomena, nor are the exceptions to the imposition of trade remedies." *Id*.

Commerce, after reexamining record evidence in its Second Remand, lacked any basis to challenge this "Court's holding that global excess capacity 'is not a unique market phenomenon,' nor are 'the existence of trade remedies and subsidies' and 'the exceptions to the imposition of trade remedies.'" Second Remand at 11 (quoting *Garg*, 569 F. Supp. 3d at 1214). Consequently, Commerce found that because "the market phenomena relied upon in the *Final Results* are not unique to India (and thus not a PMS), we are no longer finding that a PMS existed in India

during the period of review with respect to the price of hot-rolled coil {'HRC'}." *Id*.

Nucor fails to demonstrate how globally prevalent phenomenon of general nature such as global excess steel capacity, trade remedies, or subsidies qualified as uniquely Indian phenomenon. Yet Nucor asserts that "with the ample evidence on the underlying administrative record, Commerce should have fully considered the record evidence and found a PMS to exist in India." Nucor Comments at 2. However, Nucor fails to pinpoint to such allegedly "ample evidence," *id*., which it claims detract from Commerce's negative PMS findings. All Nucor has to offer is that "these are uniquely Indian measures that have a distinct impact on the costs of HRC in India and contribute to a distinctly Indian PMS." *Id*. at 5. However, the fact that the government of India instituted trade remedy and subsidy measures or that the cost of HRC in the Indian market was affected by these actions, fail to satisfy the conditions for a PMS in India. To the contrary, those government actions and market phenomenon ultimately arose due to global steel overcapacity, a "global" phenomenon, which is the very antithesis of a "particular" market situation. Moreover, the Indian government measures were of a general, rather than a particular nature, since similar actions were undertaken by several other governments around the world.

Therefore, Nucor's request that this Court "once again remand to Commerce, instructing the agency to reconsider the record evidence, fully explain its reasoning, and find that a PMS existed in India during the {period of review ('POR')}" is unpersuasive and without merit. Nucor Comments at 2.

Second, as to whether the alleged PMS distorts the cost of production Nucor argues that "the Indian government clearly recognizes the adverse price effects that imports are having on domestic HRC prices and, thus, the distortive effects these imports have in the Indian market." Nucor Comments at 4. Again, Nucor's arguments are unpersuasive.

3

This Court cautioned Commerce against simply assuming that "the distortions created by the market phenomena automatically render the market unsuitable for comparison" and explained that the statute required "that the existence of a PMS must be 'such that' it renders the cost of fabrication and materials inaccurate. See 19 U.S.C. § 1677b(e)." *Garg*, 569 F. Supp. 3d at 1214.

Commerce chose to consider "this issue moot," because "we are no longer finding that a PMS existed in India during the period of review with respect to the price of hot rolled coil." Second Remand at 11.

In its Comments, Nucor merely regurgitates Commerce's findings from the invalidated *Final Results* that "adversely priced HRC entering India distorted the costs of production for Indian pipe" and "distortive subsidy programs" that "exerted downward pressures on HRC prices in India, in connection with transactions involving consumers of HRC." Nucor Comments at 4-5. Again, Nucor's general arguments are unsupported by substantial record evidence and fail to demonstrate how a PMS – even if presumed to be true, which it is not – rendered Garg's cost of fabrication and materials inaccurate so that Garg's reported costs of production were distorted and not in the ordinary course of trade.

Third, as to the regression analysis Commerce initially applied to compute PMS adjustments, Nucor argues that "Commerce failed to address the fact that the PMS regression analysis itself shows the existence of a PMS in India, reaching only the cursory conclusion that the 'model is intended to quantify the impact of specific market phenomena on prices; it is not itself a 'unique market phenomenon' that would, on its own, support a PMS determination.'" Nucor Comments at 6. Nucor conflates a regression analysis, which simply is a computational methodology for obtaining a PMS adjustment, with substantial evidence that independently

4

supports the existence of PMS as well as the consequential distortive HRC prices that, in turn, result in Garg's costs of production being not accurate in the ordinary course of trade.

In its decision, this Court pointed to a slew of significant flaws in the regression analysis, holding that Commerce failed to "address record evidence detracting from the validity of the OLS Regression Model." *Garg*, 569 F. Sup. 3d at 1217. First, this Court found that "{a} significant reduction in the sample size without further explanation calls into question whether the eight remaining countries {from the 38 countries used in the preliminary results} are a representative sample of the population or cherrypicked to favorably manipulate the results of the OLS Regression Model." *Id*. at 1218. Second, this Court held that Commerce failed to address "a study contradicting the inverse relationship between global steel overcapacity and HRC prices," which is at the core of the regression methodology. *Id*. Third, this Court asked Commerce to rebut "evidence suggesting the OLS Regression Model is unstable" and to explain why "some of the variables selected by Commerce are over inclusive, while other 'critical' explanatory variables are omitted completely." *Id*. (citation omitted). Fourth, this Court asked Commerce to explain whether its "decision to exclude variables for fiscal, monetary, and taxation policies is reasonable because Commerce does not explain whether the variables are relevant or whether their omission introduced an unacceptable amount of bias into the regression." *Id*. at 1220. Fifth, this Court asked Commerce to address evidence "demonstrating that changing the time period analyzed by the regression significantly impacts the relationship between the explanatory variable and dependent variable." *Id*.

In its redetermination, Commerce did not analyze its regression analysis under the substantial evidence standard of review, reasoning that "the regression analysis are moot at this

time" because it is "no longer finding that a PMS existed in India during the POR with respect to the price of hot-rolled coil." Second Remand at 16.

Nucor entirely fails to address the concerns raised by this Court. Instead, Nucor touts regression analysis as "provid{ing} a sophisticated demonstration of both the existence of a PMS in a particular market and for individual producers as well as the specific distortive impact of that PMS on the costs of production." Nucor Comments at 5. Nucor claims that "{t}hese regressions show the unique effects of the global steel overcapacity crisis on given market, demonstrating the degree to which Indian producers are affected by that PMS factor." *Id*. Nucor errs by conflating a computational tool with an analytical tool. Regression methodology cannot be used to backfill the void created by the absence of substantial evidence supporting the PMS or the distortion to the Indian HRC prices. As such, Nucor's arguments are without merit.

In sum, this Court should reject Nucor's arguments and affirm Commerce's second remand redetermination.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*/s/ Ned H. Marshak*
Ned H. Marshak\*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

\*599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
\*\*
1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

Dated: August 17, 2022

# CERTIFICATE OF COMPLIANCE

      Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Reply to Comments on Remand Redetermination, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 1,542 words, less than the 9,149 word limit.

                                           /s/ *Jordan C. Kahn*
                                           *Counsel for Plaintiffs Garg Tube*
                                           *Export LLP and Garg Tube Limited*

Dated: August 17, 2022

11750624_1