Slip Op. 22-120

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>WHEATLAND TUBE and NUCOR TUBULAR PRODUCTS INC.,<br><br>    Defendant-Intervenors. | Before: Claire R. Kelly, Judge<br><br>Court No. 20-00026 |

## OPINION

[Sustaining the U.S. Department of Commerce's second remand redetermination and final results in the 2017–2018 administrative review of the antidumping duty order covering welded carbon steel standard pipes and tubes from India.]

Dated: October 24, 2022

Ned H. Marshak and Jordan C. Kahn, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, for plaintiffs Garg Tube Export LLP and Garg Tube Limited.

Robert R. Kiepura, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel was Shelby M. Anderson, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Court No. 20-00026 Page 2

Robert E. DeFrancesco, III, Theodore P. Brackemyre, Alan H. Price, and Paul A. Devamithran, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Tubular Products, Inc.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") second redetermination on remand filed pursuant to the court's order in Garg Tube Exp, LLP v. United States, 569 F. Supp. 3d 1202 (Ct. Int'l Trade 2022) ("Garg II") in connection with Commerce's 2017–2018 administrative review of the antidumping duty ("ADD") order on welded carbon steel standard pipes and tubes ("CWP") from India, covering the period of review from May 1, 2017 to April 30, 2018. See [CWP] from India, 85 Fed. Reg. 2,715 (Dep't Commerce Jan. 16, 2020) (final results of antidumping duty admin. review; 2017–2018) ("Final Results") and accompanying Issues and Decision Memorandum, A-533-502, (Jan. 9, 2020), ECF No. 24-5 ("Final Decision Memo."). In Garg II, the court remanded Commerce's first remand results to reconsider its determination that a particular market situation ("PMS") existed in India for hot-rolled coil steel ("HRC") and its regression methodology applying a PMS adjustment, or explain its determinations and support them with substantial evidence. Garg II, 569 F. Supp. 3d at 1220–21. On remand, under respectful protest, Commerce no longer finds that a PMS existed, and accordingly no longer applies a PMS adjustment to the costs of production for sales based on constructed value. See Final Results of Redeterm. Pursuant to Ct. Remand, June 9, 2022, ECF No. 98 at 17–22 ("Second Remand Results"). Commerce's

redetermination is supported by substantial evidence and complies with the court's remand instructions. Therefore, Commerce's Second Remand Results are sustained.

## BACKGROUND

The court presumes familiarity with the facts of this case as set forth in its previous opinions remanding Commerce's First Remand Results for further consideration, and recounts only the facts necessary to consider the Second Remand Results. In 2018, Commerce conducted an administrative review of the ADD order covering certain CWP from India for the period of review covering May 1, 2017 through April 30, 2018. See Initiation of [ADD] and Countervailing Duty Admin. Reviews, 83 Fed. Reg. 32,270, 32,270 (Dep't Commerce July 12, 2018). Garg Tube Export LLP and Garg Tube Limited (collectively "Garg"), challenged the results of the Final Determination, arguing that Commerce's use of facts available with an adverse inference, finding of a PMS, application of a PMS adjustment, and PMS methodology were contrary to law and unsupported by substantial evidence. See Garg Tube Exp. LLP v. United States, 527 F. Supp. 3d 1362, 1364–65 (Ct. Int'l Trade 2021) ("Garg I").

In calculating Garg's dumping margin, Commerce relied on facts available with an adverse inference to fill a gap in the record for Garg's cost of production data. See Final Decision Memo. at 32–41. In Garg I, the court remanded Commerce's decision to rely on an adverse inference for further explanation or reconsideration because it could not discern how Commerce applied Section 776 of the Tariff Act from

Court No. 20-00026                                                                                                                                           Page 4

Commerce's explanation in the Final Decision Memo. See Tariff Act of 1930 § 776, as amended, 19 U.S.C. § 1677e (2018);[1] See Garg I, 527 F. Supp. 3d at 1371–73. Commerce then abandoned its use of facts available with an adverse inference, relying instead on neutral facts available. Garg II, 569 F. Supp. 3d at 1206. The court sustained Commerce's use of neutral facts available in Garg II, and Commerce's use of facts available with an adverse inference is no longer at issue. Id.

     Commerce also found that a PMS existed in India which distorted the price of HRC, and applied a PMS adjustment to its sales-below-cost test. Final Decision Memo. at 19–26; Memo. Re: Decisions on [PMS] Allegations at 18–27, PD 209, bar code 3859233-01 (July 10, 2019) ("PMS Memo."). In Garg I, the court remanded Commerce's determination to use a PMS adjustment, and to apply this adjustment in its sales-below-cost test, finding that "the statute does not empower Commerce to adjust a respondent's reported costs to account for a cost-based PMS when Commerce relies on home market or third country market sales to determine normal value." Garg I, 527 F. Supp. 3d at 1370.[2]

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

[2] Because Garg I remanded Commerce's determination regarding home market sales, it did not reach the issues of whether the PMS determination was supported by substantial evidence or whether Commerce's methodology for calculating the PMS adjustment was reasonable. Garg I, 527 F. Supp. 3d at 1371–73.

In its first remand redetermination, Commerce removed the PMS adjustment to the cost of production in its sales-below-cost test, and the court sustained this aspect of the remand results. Garg II, 569 F. Supp. 3d at 1206, 1221; Final Results of Redeterm. Pursuant to Ct. Remand, Oct. 7, 2021, ECF Nos. 73-1 ("First Remand Results"). Commerce continued, however, to find that a PMS existed in India, affecting the price of HRC. First Remand Results at 8–10. It based this finding on: (1) the cumulative and collective impact of global steel overcapacity, (2) subsidization of the Indian HRC market by the Government of India ("GOI"), (3) trade interventions by the GOI, and (4) Garg's nonpayment of antidumping and safeguard duties on imports of HRC on the Indian steel market. Id. at 19–31. In Garg II, the court noted that Commerce relied on several market phenomena to make its PMS determination, and explained that Commerce needed to explain specifically how these phenomena gave rise to a PMS, and how that situation affected Garg's costs of production, in order to continue to find a PMS. Garg II, 569 F. Supp. 3d at 1210, 1214. The court ordered Commerce to either reconsider its finding of a PMS, or further explain its determination and support it with substantial evidence. Id. at 1221. The court also remanded the First Remand Results for further explanation of the regression model which Commerce used to determine its PMS adjustment because Commerce failed to address record evidence that detracted from its determination. Id.

Now, in its second remand redetermination, Commerce, under respectful protest, finds that there was no PMS for HRC during the period of review, and has revised Garg's dumping margin accordingly. Second Remand Results at 20. Commerce also determines that, because there is no PMS for HRC, it need not make any adjustment to Garg's HRC prices, and thus, the court's instruction regarding PMS regression methodology is moot. Id. at 16. Defendant-Intervenor Nucor Tubular Products Inc. ("Nucor") submitted comments disputing Commerce's finding that there was no PMS, while Garg urges the court to sustain the Second Remand Results in their entirety. See Def.-Int. [Nucor]'s Cmts. on Final Results of Redetermination ("Nucor Cmts."), July 11, 2022, ECF No. 101; see also Pl. [Garg]'s Cmts. on Final Results of Redetermination ("Garg Cmts."), July 11, 2022, ECF No. 100.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2018), which grants the court authority to review actions initiated under 19 U.S.C. § 1516a(a)(2)(B)(iii) contesting the final determination in an administrative review of an ADD order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (citation omitted).

## DISCUSSION

In its second remand redetermination, Commerce under respectful protest concludes there was no PMS for HRC in India during the period of review. Second Remand Results at 16, 19. Garg agrees with Commerce's determination, and urges the court to sustain the second remand results. Garg Cmts. at 3–4. Nucor disputes Commerce's finding that there was no PMS, and urges Commerce to further explain its methodology. Nucor. Cmts. at 1–6. For the following reasons, Commerce's determination is sustained.

As the court explained in Garg II, a PMS exists when "the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade." 19 U.S.C. § 1677b(e). Neither the statute nor the legislative history directly defines what constitutes a PMS. The phrase "particular market situation" existed prior to the Trade Preferences Extension Act of 2015 ("TPEA"), which added the PMS language to 19 U.S.C. § 1677b(e), and appears in 19 U.S.C. § 1677b(a)(1)(B)(ii)(III) and (C)(iii), where it triggers the use of constructed value for normal value.[3] The Statement of Administrative Action to the Uruguay Round Agreements Act explains that:

---

[3] To determine "whether subject merchandise is being sold, or is likely to be sold at less than fair value" Commerce compares the export price or constructed export price with the normal value of the subject merchandise. 19 U.S.C. § 1677b(a). Commerce may determine the normal value of the subject merchandise using one of several methodologies. See 19 U.S.C. § 1677b(a)(1)–(5). Commerce may use the constructed value of the subject merchandise if the normal value cannot be determined under paragraph (1)(B)(i) or (ii). 19 U.S.C. § 1677b(a)(4).

> The Agreement does not define "particular market situation," but such a situation might exist where a single sale in the home market constitutes five percent of sales to the United States or where there is government control over pricing to such an extent that home market prices cannot be considered to be competitively set. It also may be the case that a particular market situation could arise from differing patterns of demand in the United States and in the foreign market. For example, if significant price changes are closely correlated with holidays which occur at different times of the year in the two markets, the prices in the foreign market may not be suitable for comparison to prices to the United States.

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1, at 822 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4162. If a PMS exists, the statute provides that "[Commerce] may use another calculation methodology under this part or any other calculation methodology." 19 U.S.C. § 1677b(e). The statute also provides that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade . . . " Id. The use of the causal phrase "such that" suggests that in addition to finding unique market phenomena, Commerce must demonstrate that those market phenomena prevent the cost of materials and fabrication from accurately reflecting the cost of production. Finally, in Garg II, the court held Commerce must not only identify market phenomena which might affect price, it must also explain how those phenomena are unique to a particular market. Garg II, 569 F. Supp. 3d at 1214.

Court No. 20-00026 Page 9

Here, Commerce concludes that it is unable to offer further explanation of how the market phenomena affected HRC costs or how those phenomena were unique to India, and under protest, concludes there was no PMS.[4] See Second Remand Results at 18–19. Although Nucor argues Commerce's prior determination was correct and Commerce should simply offer a fuller explanation of its determination, Nucor Cmts. at 2–3. Commerce concedes it has no further explanation to offer. Second Remand Results at 19.

Nucor also argues that Commerce's chosen regression methodology independently demonstrates the existence of a PMS. Nucor Cmts. at 5. Nucor believes that this methodology provides a "sophisticated demonstration of both the existence of a PMS in a particular market and for individual producers as well as the specific distortive impact of that PMS on the costs of production," in addition to showing "what the costs would be in a given country absent the existence of a PMS." Id. Nucor further argues that Commerce's chosen regression methodology shows how each Indian producer is uniquely affected by the PMS. Nucor Cmts. at 5–6. Commerce's characterization of its chosen regression methodology addresses this argument succinctly, acknowledging that the regression model "is not itself a 'unique

---

[4] Commerce also addresses several of Nucor's arguments that were specifically rejected in Garg II, see Nucor Cmts. at 4–5 (CWP producers did not have to pay duties on imported steel; CWP producers received domestic subsidies from the GOI), explaining that to revisit an analysis already rejected by the court would be inconsistent with the Court's order in Garg II. Second Remand Results at 19.

Court No. 20-00026 Page 10

market phenomenon' that would, on its own, support a PMS determination." Second Remand Results at 19.

## CONCLUSION

For the foregoing reasons, Commerce's Second Remand Results are supported by substantial evidence, comply with the court's order in Garg II, and are therefore sustained. Judgment will enter accordingly.

                                                 /s/ Claire R. Kelly
                                                 Claire R. Kelly, Judge

Dated:      October 24, 2022
              New York, New York